Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2976 | **DATE** | 5/3/2004 |
| **CASE TITLE** | Kaczmarski vs. Wheaton Comm. Sch. Dist., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Emergency Motion for Temporary Restraining Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's complaint [1-1] is dismissed without prejudice and plaintiff's emergency motion for temporary restraining order is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 0 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 7 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RJ/TL | courtroom deputy's initials | 2004 MAY -3 PM 3:54 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| SANDY KACZMARSKI, as mother and best friend of CODY RODMAN, a minor,  )<br>)<br>Plaintiff,  )<br>v.  )<br>)<br>WHEATON COMMUNITY UNIT SCHOOL DISTRICT # 200, et al.  )<br>)<br>Defendants.  ) | Case No. 04-C-2976<br><br>Judge Joan B. Gottschall<br><br>DOCKETED<br>MAY 0 4 2004 |

## MEMORANDUM OPINION AND ORDER

Sandy Kaczmarski, on behalf of her son, Cody Rodman, has sued Wheaton Community Unit School District #200 (the "District"), Cody's principal, Sandy Niemiera, and two other District officials, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, challenging her son's removal from Washington Elementary School ("Washington") in Wheaton, Illinois. Cody has been diagnosed as emotionally disabled and has been receiving special education services from the District pursuant to the IDEA. Until recently, Cody was allowed to attend classes at Washington with non-disabled children. However, on March 26, 2004, Cody was suspended for three days for bringing a weapon (a letter opener) to school. After Cody served his suspension, the school informed Kaczmarski that Cody must attend classes in an alternative setting until the school could assess whether he posed a danger to the school community. Later, after convening a meeting to discuss Cody's conduct, District officials determined that Cody should attend classes at a therapeutic alternative day school. Kaczmarski claims that defendants did not adhere to the IDEA's procedural safeguards in deciding to remove Cody from his mainstream classes.

Kaczmarski has moved the court for a temporary restraining order, requesting that the court require defendants to return Cody to Washington pending an administrative hearing on this dispute. For the reasons stated below, Kaczmarski's complaint is dismissed without prejudice and her motion for temporary restraining order is denied.

## **FACTUAL BACKGROUND**

Cody Rodman is a fifth-grade student who has been diagnosed with bipolar disorder and attention deficit / hyperactivity disorder (ADHD). Cody qualifies as "emotionally disabled" under the IDEA and has been receiving special education services from the District since April of 2002. Pursuant to the IDEA, Cody's parents and school officials developed an individualized education plan ("IEP") for Cody that provided Cody counseling support and a "behavior intervention plan" designed to address potential misbehavior.[1] Although Cody was originally required to attend classes with other learning and emotionally disabled children, the school returned Cody to a mainstream classroom setting at Washington in the Fall of 2003.

Cody attended classes at Washington with non-disabled students until March 26, 2004. On that date, Cody threatened two children with a letter opener that he had brought to school. When Niemiera intervened and confiscated the letter opener, Cody allegedly attempted to wrestle the opener away from her and yelled that he wanted to kill himself and one of the students he had been accused of threatening.[2] As a result of Cody's conduct, Niemiera suspended Cody for three days.

---

[1] The IDEA provides that all decisions regarding a disabled student's individual education plan should be made by the "IEP Team," which includes the child's parents, at least one of the child's regular education teachers (if applicable), at least one of the child's special education teachers (if applicable), a representative of the local educational agency, "an individual who can interpret the instructional implications of evaluation results," and, if appropriate, the child. 20 U.S.C. § 1414(d)(1)(B); 34 C.F.R. § 300.344.

[2] The District alleges that Cody had exhibited threatening behavior on several occasions prior to the March 26, 2004 incident.

The school sent a letter to Kaczmarski, informing her of the suspension and stating that "Cody has been referred for a safety evaluation with [a counselor]. Cody will not be able to return to school until the safety evaluation has been completed. An alternative to suspension place (sic) will be offered."

On April 7, 2004, the last day of Cody's suspension,[3] Niemiera sent Kaczmarski a second letter, reiterating that Cody could not return to school until he completed the safety evaluation. Niemiera's letter offered that, in the meantime, Kaczmarski could choose between two "alternative education settings" for Cody: "a therapeutic day school or a homebound tutor for 10 hours each week." Kaczmarski rejected both options and insisted that Cody be returned to a mainstream class setting. However, Kaczmarski allowed Cody to submit to the safety evaluation.

On April 14, 2004, the District sent Kaczmarski a "notification of conference," indicating that, on April 20, 2004, Cody's IEP Team would meet to (1) review Cody's IEP, (2) evaluate whether Cody's misconduct was related to his disability, (3) review Cody's behavior intervention plan, (4) review Cody's interim alternative educational setting, and (5) discuss Cody's safety evaluation. Kaczmarski's husband attended the April 20, 2004 meeting along with the rest of the IEP Team. At the IEP meeting, the school members of the IEP team determined that the March 26 incident was a manifestation of Cody's emotional disability and that Cody's placement should be changed to a therapeutic alternative day school.

Kaczmarski disagreed with the District's decision and refused to consent to the new placement. On April 27, 2004, Kaczmarski filed this lawsuit requesting (a) a judicial declaration that defendants' actions violated the IDEA, and (b) a preliminary injunction ordering defendants to return

---

[3] Because the school's spring vacation period started on March 29, Cody did not begin serving his suspension until April 5, 2004.

Cody to his mainstream classes pending an expedited due process hearing by an independent hearing officer.

## ANALYSIS

Kaczmarski has filed an emergency motion for a temporary restraining order, repeating her complaint's request that the court require defendants to return Cody to classes at Washington "until such time as an expedited due process hearing can be held" by an independent hearing officer. However, because Kaczmarski has not yet exhausted her administrative remedies, and because the temporary relief Kaczmarski seeks is both premature and contrary to the express "stay-put" provisions of the IDEA, Kaczmarski's motion for a TRO is denied.

### I. *The IDEA*

Congress passed the Individuals with Disabilities Education Act "to assure that all handicapped children have available to them. . .a free appropriate public education which emphasizes special education. . .[and] to assure that the rights of handicapped children and their parents or guardians are protected." 20 U.S.C. § 1400(c).

The primary vehicle for implementing those goals is the "individualized education program" (IEP), which the IDEA mandates for each disabled child. The IEP sets out annual and short-term objectives for improvements in class performance, and describes the class setting and specially designed instruction that will enable the child to meet those objectives. 20 U.S.C. § 1401(19). The IEP Team must review and, where necessary, revise the IEP at least once a year to ensure that local agencies tailor instruction to each child's unique needs. 20 U.S.C. § 1414(a)(5).

The IDEA includes several procedural safeguards to protect the rights of the disabled child and the parents. Among other protections, the IDEA sets clear limits on a school's authority to unilaterally discipline a disabled student for violating school rules. 20 U.S.C. § 1415. Specifically,

the IDEA contemplates the scenario at issue here, allowing school officials to order a change in a child's educational placement for up to 45 days if the child brings a weapon to school. 20 U.S.C. § 1415(k)(1)(A)(ii); 34 C.F.R. § 300.520(a)(2)(i). The child's 45-day "interim alternative placement" must be determined by the IEP team.[4] 34 C.F.R. § 300.522(a). If the parents disagree with the school's disciplinary action, they may appeal the decision by requesting an administrative due process hearing. 20 U.S.C. § 1415(k)(6)(A); 34 C.F.R. § 300.525.

The IDEA contains "stay-put" provisions that specify where a child should attend classes during a pending appeal. Generally, if a parent appeals a placement decision, the student can remain in his current class setting until the appeal is resolved. 20 U.S.C. § 1415(j). However, the stay-put rule is different in cases where the child has brought a weapon to school. In cases of weapons possession, the child must remain in the interim placement until either the appeal is resolved or the 45-day interim period elapses (whichever comes first). 20 U.S.C. § 1415(k)(7)(A); 34 C.F.R. § 300.526(a). This "weapons exception" to the stay-put rule allows the school to take appropriate disciplinary action while a more detailed investigation takes place.

The weapons exception to the IDEA's stay-put provision does not apply, however, if, in addition to taking disciplinary action, the school also proposes to change the child's <u>permanent</u> placement. If during the 45-day interim period, school personnel propose to change the child's permanent placement, the child must be returned to the "current placement" (*i.e.* the place where the child attended classes before he was removed to a temporary alternative) during the pending appeal. 20 U.S.C. § 1415(k)(7)(B); 34 C.F.R. § 300.526(b). If school personnel believe that it is dangerous

---

[4] The IDEA does not specify when the IEP team must meet to determine the alternative setting. However, the statute mandates that the IEP team meet on closely related questions no later than 10 business days after the disciplinary action is taken. *See* 34 C.F.R. §§ 300.520(b), 300.523(a)(2).

-5-

for the child to be returned to mainstream classes they must request an expedited due process hearing to determine the danger. 20 U.S.C. § 1415(k)(7)(C); 34 C.F.R. § 300.526(c).

## *II.     Kaczmarski's Emergency Motion For Temporary Restraining Order.*

The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01-C-585, 2001 WL 128164, at *1 (N.D.Ill. Feb.9, 2001). The party seeking the TRO bears the burden of showing that (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.2001). If the court is satisfied that those requirements have been met, then it must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* Finally, the court must consider how the public's interests would be affected by granting or denying the preliminary relief. *Id.*

Here, Kaczmarski's TRO motion fails because she cannot demonstrate a likelihood of success on the merits of her complaint. To the contrary, (a) Kaczmarski's claim for declaratory judgment is barred for failure to exhaust her administrative remedies, and (b) her request for interim relief is both premature and contrary to the "stay-put" provisions of the IDEA.

Kaczmarski may believe that the District's decision to place Cody in an interim alternative placement for bringing a weapon to school was illegal. However, Kaczmarski's complaint for declaratory judgment is barred because she has not yet sought an administrative review of the District's decisions. Judicial relief is unavailable under the IDEA until all administrative procedures have been exhausted. *Honig v. Doe*, 484 U.S. 305, 326-27 (1988). The statute's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in

resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies. *See Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 992-93 (7th Cir.1996); *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378-79 (11th Cir.1996). If Cody's parents wish to overturn the District's decision, they may appeal that decision by calling for an administrative due process hearing. If Cody's parents are dissatisfied with the administrative ruling, then they may seek relief from the federal district court. 20 U.S.C. § 1415(i)(2). Until she exhausts her administrative remedies, however, Kaczmarski's complaint for declaratory judgment cannot succeed.[5]

Moreover, because Cody's parents have not appealed the school's placement decisions, Kaczmarski's request for a TRO is premature and contrary to the "stay-put" provisions of the IDEA. Documents attached to Kaczmarski's complaint reflect that the school ordered an immediate interim change to Cody's placement on April 7, 2004. In an April 7 letter, Niemiera informed Kaczmarski that Cody was not allowed to return to school because of the March 26 weapon incident, and gave Kaczmarski a choice of alternative placements. The new placement was to go into effect once Cody had served his 3-day suspension. Therefore, for purposes of measuring the 45-day interim period, the court finds that Cody's interim placement began once his suspension ended on April 7, 2004 at 3:30 PM. The 45-day interim period will elapse on May 22, 2004.

Kaczmarski's TRO motion is premature because the school's stay-put obligations have not yet been triggered. The IDEA sets out a clear procedure for how the parties should proceed. Cody's parents may appeal the District's placement decisions by requesting a due process hearing. 20

---

[5] While parties may bypass the administrative process if they can demonstrate that administrative proceedings would be futile or inadequate, Kaczmarski has not made such an argument. *Honig*, 484 U.S. at 326-27.

U.S.C. § 1415(k)(6); 34 C.F.R. § 300.525. If Kaczmarski appeals, then the IDEA's stay-put provisions are implicated. Because the school has proposed a change to Cody's permanent placement, Cody must be returned to classes at Washington while the appeal is pending. 20 U.S.C. § 1415(k)(7)(B); 34 C.F.R. § 300.526(b). If the school maintains that it is too dangerous for Cody to return to his "current placement," the school may call for an expedited hearing and request an additional 45-day extension to Cody's interim placement. 20 U.S.C. § 1415(k)(7)(C); 34 C.F.R. § 300.526(c)(3).

The only question remaining is: if the school requests an expedited hearing on the potential danger of returning Cody to Washington, where should Cody attend classes while the parties wait for an administrative decision? The IDEA does not directly answer that question. On the one hand, the statute's stay-put provisions do not purport to interfere with a school's ability to place a child in an interim setting for 45 days as a disciplinary measure. To the contrary, the IDEA expressly preserves the school's ability to discipline disabled students. However, the statute clearly contemplates that, in cases of weapons possession, schools may not keep a child in an alternative placement for more than 45 days without administrative review of the school's decision. In other words, while the school may discipline a disabled student for past conduct, schools may not unilaterally exceed the 45-day limit simply because they believe the child is dangerous. *See Honig v. Doe*, 484 U.S. 305, 311 (1988).

The court, therefore, finds that if Kaczmarski appeals the District's placement decisions, the District may keep Cody in his alternative placement so long as it calls for an expedited hearing on whether Cody poses a danger to the school community. However, the school may not keep Cody in his alternative placement past the May 22, 2004 deadline unless it first obtains an administrative ruling allowing it to do so. If the school does not obtain such a ruling by May 22, Cody must be

returned to classes at Washington until the hearing officer rules. If the District does not abide by those "stay-put" requirements, Kaczmarski may renew her request for relief from this court. However, at this time, Kaczmarski's complaint and request for temporary relief are both premature, and, therefore, her TRO motion must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed without prejudice and her emergency motion for a temporary restraining order is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:   May 3, 2004